# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| AMISUB (SFH), INC. d/b/a SAINT FRANCIS HOSPITAL and SAINT FRANCIS HOSPITAL – BARTLETT, INC., | : : : : |
| Plaintiffs, | Case No. 2:21-cv-02308-JTF-atc : : |
| v. | : JURY DEMAND : |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, | : : : |
| Defendant. | : : |

## **CIGNA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Plaintiffs' opposition to Cigna's Rule 12 motion offers no reason why the Court should not dismiss each count in Plaintiffs' complaint.[1]  <u>First</u>, Plaintiffs cannot justify their failure to identify the healthcare claims at issue—in contravention of clear instructions by courts in these types of cases that healthcare providers like Plaintiffs must provide basic details about the claims that underlie their suit—which warrants the dismissal of Plaintiffs' entire complaint.  <u>Second</u>, ERISA preempts Plaintiffs' state law claims; *Rutledge* does not change that, and in fact, the Supreme Court made clear that Plaintiffs' contorted reading of its decision is incorrect.  <u>Third</u>, Plaintiffs' unjust enrichment and *quantum meruit* claims fail because healthcare providers do not confer a benefit upon *insurers* by providing services to insureds, and Plaintiffs cannot ignore squarely applicable law to the contrary.  <u>Fourth</u>, Plaintiffs' breach of implied-in-fact contract claim fails because it is based on a prior *expired* contract between the parties, which courts have repeatedly found cannot imply a new subsequent contract.  (D.E. 26, Pls.' Opp. to Cigna's Br. ("Opp.") at 17; D.E. 1, Pls.' Complaint ("Compl.") ¶ 63.)  <u>Lastly</u>, Plaintiffs' request for declaratory judgment should be dismissed because Plaintiffs have no response to the reality that the Court will need to conduct a case-by-case analysis of any of their future claims to determine whether the relief that Plaintiffs seek would be warranted.

## **ARGUMENT**

### I.   **PLAINTIFF FAILED TO PLEAD THEIR CLAIMS WITH SUFFICIENT DETAIL.**

Plaintiffs argue that Cigna's request for claim-specific information amounts to an unreasonable demand for an "extraordinary degree of specificity."  (Opp. at 4.)  There is nothing extraordinary about requiring Plaintiffs to identify the claims that they assert are underpaid.  This

---

[1] Unless otherwise noted, all defined terms have the meanings provided in Cigna's opening brief ("Br."), all emphasis is added, and all internal citations and quotations omitted.

1

basic information should include the specific claims at issue; the patients, services, and dates of treatment at issue; the insurance policies covering those claims; and which claims are governed by ERISA.  (Br. at 6.)  Such information is necessary to provide Cigna with sufficient notice under Rules 8 and 10, including to determine: (1) whether each of Plaintiffs' many different services was emergent considering the patient's condition; (2) whether any services were denied; (3) whether the amount Cigna paid on each claim complied with Tennessee law; and (4) which of the claims asserted by Plaintiffs are governed by ERISA plans and therefore preempted by ERISA.  As much as Plaintiffs try to sweep their claims into an "across the board" analysis, these facts are core to each of their claims, which is why courts have required this kind of information to be incorporated into Plaintiffs' complaint rather than force Cigna to chase a moving target through the course of discovery.  (*See id.* at 6-8 (citing cases).)

That is why Chief Judge Moore rejected the very same arguments levied by Plaintiffs here when he required the plaintiff hospitals in the *North Shore* case to identify each insurance claim they disputed as part of their complaint, finding "unpersuasive" Plaintiffs' charge that Cigna is "attempt[ing] to freeze the contents of the claims set" given that "[a]t a minimum, Plaintiffs can provide additional factual support for the more than 500 separate patient encounters" involved there.[2]  *N. Shore Med. Ctr., Inc. v. Cigna Health & Life Ins. Co.*, 2021 WL 3419356, at *4 (S.D. Fla. May 10, 2021).  The very case that Plaintiffs rely on—*National Laboratories, LLC v. United Healthcare Group, Inc.*, 2018 WL 11260511 (S.D. Fla. Apr. 4, 2018)—supports this result.  There,

---

[2]  This reasoning applies all the more to the ***thousands*** of patient encounters allegedly involved here.  Moreover, Plaintiffs' concern that allowing claims to "accrue during the pendency of the litigation" will result in a "never-ending cycle of trips to the courthouse" is unfounded.  (Opp. at 7.)  A judgment will guide the parties on how to handle future claims.  If the parties cannot resolve disputes on unasserted claims outside of court, then the parties can engage in separate litigation related to these separate claims.  But Cigna should not have to defend against claims Plaintiffs may add without the benefit of the timely exchange of discovery.

the provider-plaintiffs provided spreadsheets from the beginning that identified "each unprocessed claim by . . . the patient's name, date of birth, service date, service provider, and balance due." *Id*. at *2.

Plaintiffs argue that the authorities cited by Cigna are inapposite because they involve adverse benefit determinations (*i.e.* denials) on individual claims, while Plaintiffs here allegedly challenge systematic underpayments across all claims. (Opp. at 5-6.) But while Plaintiffs claim that this case only concerns the "rate of payment" rather than the "right to payment," Cigna cannot verify whether that assertion is true without claim-level information. (Br. at 8.) Indeed, Plaintiffs now openly concede that their claims apparently ***do*** include "fully or partially denied claims for reimbursement." (D.E. 44, Joint Rule 26(f) Discovery Plan at 2 (offering to "carve out" such claims).) These conflicting representations underscore why Plaintiffs must provide a list of the specific claims at issue with their pleading—particularly since determining which claims or portion of claims were covered or denied involves interpretation of plan terms, and Cigna and the Court must know, at a minimum, which claims are subject to plans governed by ERISA. (Br. at 7-8; *see RMP Enters., LLC v. Conn. Gen. Life Ins. Co.*, 2018 WL 6110998, at *8 (S.D. Fla. Nov. 21, 2018) (specifically requiring claim-level information for adjudication of both the ERISA claims as well as the contract and implied-contract theories).)

Finally, Plaintiffs' attempt to cabin *North Shore*—which was dismissed in the first instance based in part on plaintiffs' failure to provide claim-level detail—as an outlier is unavailing. (Opp. at 6-7 n.6.) Plaintiffs point to *Florida Emergency Physicians Kang & Assocs., M.D., Inc. v. United Healthcare of Florida, Inc.*, 2021 WL 2525262 (S.D. Fla. Mar. 16, 2021), but as Chief Judge Moore found, *Kang* is unpersuasive where, as here, there are potential disputes about what claims or portions of claims are covered by the applicable plans. *N. Shore*, 2021 WL 3419356, at *4.

## II. ERISA PREEMPTS PLAINTIFFS' CLAIMS INVOLVING SELF-FUNDED PLANS.

Most of Cigna's business consists of administering ERISA plans on behalf of employers, who have no legal obligation to pay Plaintiffs anything beyond what is called for under the terms of their ERISA plans, notwithstanding state laws to the contrary. Courts from the Supreme Court down have for decades found that plaintiffs cannot pursue state common law claims that would require the Court to rewrite the terms of an ERISA plan, like Plaintiffs seek to do here. Hence, a state-law claim is preempted if it "relate[s] to" an employee benefit plan—that is, if it "has a reference to" or "an impermissible connection with ERISA plans." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319-20 (2016). As discussed above, Cigna must first determine whether the claims asserted involved any valid denials and then it must determine whether the covered services were properly reimbursed in accordance with the specific plan terms. For plans governed by ERISA, those determinations will require interpretation of plan terms and therefore "relate to" the plans, so those claims are preempted. *Cole v. Am. Specialty Health Network, Inc.*, 2015 WL 1734926, at *3 (M.D. Tenn. Apr. 16, 2015) (finding state law claims preempted because "[t]hrough these claims, Plaintiffs seek reimbursement for allegedly unpaid or ***underpaid*** benefits, which would require the Court to interpret the terms of Cigna's plans to determine whether additional payments were warranted"); *see also* Br. at 11-12 (citing additional cases).

Plaintiffs try to rewrite this bedrock ERISA framework through a misreading of *Rutledge v. Pharmaceutical Care Management Association*, 141 S. Ct. 474 (2020). That case concerned an Arkansas regulation that set a floor on reimbursement rates between pharmacy benefit managers (PBMs) and pharmacies. *Id.* at 483. PBMs are intermediaries that negotiate rates with pharmacies and reimburse them on behalf of benefit plans. Plans then reimburse PBMs at higher rates to compensate the PBMs for their negotiation services. The Court found that ERISA did not preempt

4

the state regulation because the regulation merely increased the costs that ultimately accrue to plans through an intermediary, which is an insufficiently close "connection with" ERISA plans to trigger ERISA preemption. *Id.* at 480. But the Court distinguished the Arkansas regulation from laws "requiring payment of specific benefits" under an ERISA plan, which the Court expressly stated *remain* preempted. *Id.* Indeed, ERISA has never allowed providers to pursue a state common law remedy as an alternate enforcement mechanism, and the ten-page opinion in *Rutledge* did not somehow implicitly overrule decades of precedent.

Instead, *Rutledge* simply built upon the well-established framework that ERISA does not preempt laws that only *indirectly* affect plan costs. For example, in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645 (1995)—another case Plaintiffs rely on (*see* Opp. at 8)—the Court held that hospital surcharges of up to 13% on hospital billing rates for patients covered by insurers other than Blue Cross/Blue Shield were simply additional costs that had only an "indirect economic influence" and did not "bind plan administrators to any particular choice," likening those surcharges to quality standards or regulation of employment conditions, both of which could similarly increase the plans' cost but which would not be preempted. *Id.* at 659-61. So too was the case in *Rutledge*, where the Court reiterated that the only impact on the plans is that the PBMs "may" pass along the higher costs from Arkansas's rate regulations to the plans. *See Rutledge*, 141 S. Ct. at 481-482.

That is very different from Plaintiffs' state common law claims here, which act directly on the plans *themselves*. Although Plaintiffs argue that Cigna is an intermediary (like the PBMs in *Rutledge*) that may "pass along" the costs associated with higher reimbursements to plan, that is not the case for the "Self-Funded Plans" described in Plaintiffs' complaint. (*See* Compl. ¶ 1 & n.1.) To the contrary, courts recognize that for self-funded plans, *Cigna* is not financially

5

responsible for funding self-funded benefits; it merely administers the plan benefits and pays providers directly from the plans' bank accounts. *See Gobeille*, 577 U.S. at 317 ("The Plan is self-insured and self-funded, which means that Plan benefits are paid by [the Plan]."); *Henretta v. Chrysler Motors Corp.*, 977 F.2d 595 (10th Cir. 1992) ("A self-funded plan pays all benefits itself."). In other words, Cigna does not pass along any additional costs—the Self-Funded Plans themselves *directly* pay any increases to Plaintiffs' reimbursement.

This is a crucial distinction. Unlike in *Rutledge*, where PBM intermediary costs may *indirectly* lead to increased costs on the ERISA plan, Plaintiffs' claims here attempt to supplant the written ERISA plan terms for out-of-network benefits coverage and reimbursement with new terms based on Tennessee common law that Plaintiffs contend impose some "reasonable value" for their emergency services, which Plaintiffs suggest constitutes 75% of their billed charges. (Opp. at 20; Compl. ¶ 63.) But "payment of benefits" is a "central matter of plan administration," *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 148 (2001), and obligations undertaken with plan administration include "*calculating benefit levels* [and] making disbursements." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987); *see also Rutledge*, 141 S. Ct. at 480 ("ERISA is . . . primarily concerned with pre-empting laws that require providers to structure benefit plans in particular ways, *such as by requiring payment of specific benefits*."). The purported common law requirements that Plaintiffs assert do exactly that, replacing plan terms for benefits for out-of-network emergency services and requiring different, specific benefits to be paid to providers. (*See* Br. at 10-11.) This directly affects the administration of ERISA plans, and thus ERISA preempts Plaintiffs' claims.[3] *See Gobeille*, 577 U.S. at 319-20 (2016) (finding that state-law claims are

---

[3] Plaintiffs' reliance on *Glastein v. Aetna, Inc.*, 2018 WL 4562467, at *3 (D.N.J. Sept. 24, 2018)—an unpublished, out of circuit case—is unavailing. There, the plaintiff alleged that the insurer had pre-authorized the services, so there was no dispute that the provider's services were covered and

6

preempted when they "govern[] . . . a central matter of plan administration").[4]

### III. PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT (COUNT I) AND *QUANTUM MERUIT* (COUNT II) FAIL.

Cigna's motion sets out three separate reasons why Plaintiffs' unjust enrichment and *quantum meruit* claims fail: (i) the statutory requirements at issue do not create an implied-in-law contractual relationship; (ii) Plaintiffs' medical services to insureds do not directly benefit Cigna; and (iii) Plaintiffs do not plead any facts to show that it would be inequitable to retain any benefit it allegedly received for non-emergency claims. (Br. at 12-15 (citing *HCA Health Servs. of Tenn., Inc. v. Bluecross Blueshield of Tenn., Inc.*, 2016 WL 3357180 (Tenn. Ct. App. June 9, 2016)).)

Plaintiffs cannot brush aside squarely applicable Tennessee case law on all three fronts by castigating *HCA* as an "unpublished decision from a Tennessee intermediate appellate court" and therefore merely "persuasive"—particularly when they instead rely on a decision from the ***same court*** from ***fourteen years earlier***. (*See* Opp. at 14-15 (citing *River Park Hospital, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 173 S.W.3d 43 (Tenn. Ct. App. 2002)). But whether "reported" or "persuasive" or just "the law," *HCA* is directly-on-point precedent. And *HCA* is fatal to Plaintiffs' arguments, as it definitively held that the statutory obligations for hospitals to provide emergency medical treatment and for insurers to provide coverage for that treatment do not create conferral of a benefit from hospital to insurer for the purpose of unjust enrichment

---

plan interpretation was not required. Moreover, *Glastein* itself recognized that its decision was inconsistent with **Sixth Circuit** precedent, which reached the opposite result and is controlling here. *Id.* at n. 4 (citing *Cromwell v. Equicor-Equitable HCA Corp.*, 933 F.2d 1272 (6th Cir. 1991)).

[4] Consistent with those principles, post-*Rutledge* cases continue to find preemption in similar contexts. *See Gotham City Orthopedics, LLC v. Aetna Inc.*, 2021 WL 1541069, at *2 (D.N.J. Apr. 19, 2021) ("Courts routinely hold that when a party challenges the denial of ERISA benefits, but restyles those claims as common-law causes of action . . . those claims are preempted"); *Fast Access Specialty Therapeutics, LLC v. UnitedHealth Grp., Inc.*, 2021 WL 1238869, at *14 (S.D. Cal. Apr. 2, 2021) (finding common law claims preempted, explaining that "[g]iven that the instant case does not involve a state regulation, it is not clear how *Rutledge* applies").

claims. 2016 WL 3357180, at *12. As the *HCA* court explained, hospitals provide emergency services to ***patients***, and they are the ones obligated to reimburse hospitals for those services. *Id.*

Moreover, *HCA* specifically considered—and rejected—*River Park* for the same reasons that apply here: the provider-plaintiffs in *HCA* were free to recoup any further reimbursement from their patients, while in *River Park*, that was not possible because plans were part of the state Medicaid program. *Id.* at *10 ("significantly, and as distinguished from River Park, in this case HCA can seek payment directly from the patients it has treated, with the amount it may have received from BCBST operating to reduce the amount for which the patient is responsible"). Despite Tennessee courts having already ruled on the exact issue presented here, Plaintiffs would have this Court ignore settled law and take the opposite position, claiming that *HCA*'s "attempt to distinguish *River Park* is utterly unconvincing" and suggesting that *HCA* was somehow the minority position. (Opp. at 15-16 & n.13.) It is not, and courts across the country have dismissed these claims time and again based on the same reasoning.[5]

The balance of Plaintiffs' arguments is similarly unconvincing. Plaintiffs argue that the Restatement (Third) of Restitution states that hospitals can recover reimbursement for emergency

---

[5] *See, e.g.*, *Emergency Dep't Physicians P.C. v. United Healthcare, Inc.*, 507 F. Supp. 3d 814, 830 (E.D. Mich. 2020) (noting that courts have allowed these claims, "[b]ut in those cases, the healthcare providers could only bill the insurers—not the patients—under state law."); *Adventist Health Sys./Sunbelt Inc. v. Med. Sav. Ins. Co.*, 2004 WL 6225293, at *6 (M.D. Fla. Mar. 8, 2004) ("as a matter of commonsense, the benefits of healthcare treatment flow to patients, not insurance companies"); *Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) (finding medical services as benefits provided to insurers to be "counterintuitive"); *Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, 2012 WL 762498, at *8 (D.N.J. Mar. 6, 2012) (quoting *Travelers*); *Encompass Off. Sols., Inc. v. Ingenix, Inc.,* 775 F. Supp. 2d 938, 966 (E.D. Tex. 2011) (explaining that even if insurer received a benefit, "a proposition the court finds dubious, [providers's] services were rendered to and for its patients, not United"); *Air Evac EMS Inc. v. USAble Mut. Ins. Co.*, 2018 WL 2422314, at *9 (E.D. Ark. May 29, 2018), *aff'd*, 931 F.3d 647 (8th Cir. 2019); *Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*, 2013 WL 3810617, at *4 (S.D. Fla. July 22, 2013).

medical services from "the recipient of services, a successor, or a representative," (Opp. at 17), but Cigna is none of those. Plaintiffs then claim that when hospitals provide treatment, they are discharging a duty of ***insurers***, and therefore entitled to restitution. (*Id.*) But Cigna has no duty to provide treatment, so providers cannot discharge that duty on Cigna's behalf. Plaintiffs also misleadingly suggest that Cigna "acknowledges" that it is contractually obligated to hold its members harmless from balance bills, (*id.* at 19), but Cigna was clear that ***Plaintiffs*** made that allegation (Br. at 15 (citing Compl. ¶¶ 29, 53, 60)), and that in any case, whether Cigna had a contractual obligation to make a plan member whole for a balance bill is irrelevant to whether Plaintiffs can balance bill the member in the first place. (*Id.*)

## IV.   PLAINTIFFS' IMPLIED-IN-FACT CONTRACT CLAIM (COUNT III) FAILS.

Plaintiffs argue that an implied contract arose between Plaintiffs and Cigna based on certain statutory requirements and the parties' course of dealing. (Opp. at 20.) Both theories should be rejected. First, Plaintiffs misstate federal and state law, claiming that both require Cigna to "***reimburse the Hospitals*** for the reasonable value of the services the Hospitals provided." (*Id.*) But as explained in Cigna's opening brief, the statutes Plaintiffs rely on—45 C.F.R. § 147.138(b)(3) and Tenn. Code. § 56-7-2355(b)(4)—only require Cigna to provide coverage for emergency services to ***its members***, not to Plaintiffs. (Br. at 16-17.) Second, Plaintiffs argue that the parties' prior expired contract, under which Cigna allegedly agreed to pay 75% of hospitals' billed charges, amounts to a "course of dealing" requiring Cigna to continue to pay that rate. (Opp. at 20.) But Plaintiffs' own case, *River Park*, recognized that an expired contract cannot amount to an implied contract. 173 S.W.3d at 58; *see also Air Evac EMS Inc*, 2018 WL 2422314, at *8 ("the weight of the authority cuts against finding implied contracts between insurers and healthcare providers, even if the parties had a prior course of dealing"). As the court in *North Shore* explained

9

when rejecting the same course of dealing arguments, if *expired* contracts could be relied upon, "then presumably *any term* of the expired contract could continue to apply[,] and Plaintiffs could . . . receiv[e] the full benefit of the bargain of the *expired* contract to Cigna's detriment." 2021 WL 3419356, at *6. The Court should reject Plaintiffs' breach of implied-in-fact contract claim here too.

## V. PLAINTIFFS' REQUEST FOR DECLARATORY JUDGMENT (WITHIN COUNTS I AND II) SHOULD BE DISMISSED.

Plaintiffs argue that they are not requesting a declaration of the specific fair market value for each claim, but rather a declaration of the basic methodology for determining fair market value. (Opp. at 22.) But as *North Shore* explained on this exact issue, this is an "inherently overbroad request" because determining fair market value requires a "fact-intensive, case-by-case assessment to include the types of services provided and patient-specific factors such as age, medical diagnosis, and treatment history." 2021 WL 3419356, at *7. Plaintiffs also argue that dismissal of the prayer for declaratory judgment would be premature. (Opp. at 23.) Not so. Courts are clear that declaratory judgment requests should be dismissed at the Rule 12 stage where Plaintiffs "do[] not request any *specific* declarations as to any specific rights or obligations." *GVB MD v. Aetna Health Inc.*, 2019 WL 6130825, at *11 (S.D. Fla. Nov. 19, 2019); *Douglas v. Green*, 327 F.2d 661, 662 (6th Cir. 1964) (affirming dismissal of declaratory judgment action where Appellant failed to provide a "specific statement" of the remedy sought). Plaintiffs' own opposition confirms that is the case here, and their request for declaratory judgment should be dismissed.

## CONCLUSION

For the foregoing reasons, Cigna respectfully requests that this Court dismiss Plaintiffs' complaint in its entirety or, alternatively, order that Plaintiffs provide a more definite statement, together with such further relief as the Court deems just and proper.

10

Dated: October 5, 2021         **BUTLER SNOW LLP**

By:   */s/*Andre B. Mathis
Andre B. Mathis (#26458)
andre.mathis@butlersnow.com
6075 Poplar Ave, Suite 500
Memphis, TN 38119
T: 901.680.7299 | F: 901.680.7201

**MCDERMOTT WILL & EMERY LLP**
Joshua Simon (admitted *pro hac vice*)
jsimon@mwe.com
Warren Haskel (admitted *pro hac vice*)
whaskel@mwe.com
Dmitriy Tishyevich (admitted *pro hac vice*)
dtishyevich@mwe.com
Halle Landsman (admitted *pro hac vice*)
hlandsman@mwe.com
One Vanderbilt Ave
New York, NY 10017
T: 212.547.5533 | F: 646.390.2958

*Counsel for Defendant Cigna Health and Life Insurance Company*

11

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on **October 5, 2021** a copy of the foregoing was electronically filed with the Clerk of Court by using the Court's CM/ECF system, which will send a Notice of Electronic Filing to the parties listed on the Service List below:

                                                    */s/*Andre B. Mathis
                                                   Andre B. Mathis

## SERVICE LIST

**J. Black Carter**
blake@getclawfirm.com
**Chris J. Tardio**
chris@getclawfirm.com
GIDEO, ESSARY, TARDIO & CARTER, PLC
315 Deaderick Street, Suite 110
Nashville, TN 37238
Telephone: 616.254.0400

**Alan D. Lash**
alash@lashgoldberg.com
**Justin C. Fineberg**
jfineberg@lashgoldberg.com
**Greg J. Weintraub**
gweintraub@lashgoldberg.com
**Emily L. Pincow**
epincow@lashgoldberg.com
**Justin C. Fineberg**
jfineberg@lashgoldberg.com
**Jonathan E. Siegelaub**
jsiegelaub@lashgoldberg.com
**William E. Baldwin**
wbaldwin@lashgoldberg.com
**Ashley P. Singrossi**
asingrossi@lashgoldberg.com
LASH & GOLDBERG LLP
Miami Tower
100 S.E. 2nd Street, Suite 1200
Miami, FL 33131
Telephone: 305.347.4040
Facsimile: 305.347.4050

*Counsel for Plaintiffs*

61495757.v1